I didn't realize that she was a CJ. Good morning, Your Honors. May it please the Court. My name is Anne Voigt, and I represent Jared Wheat and Hi-Tech Pharmaceuticals. Ms. Dunnegan is representing Mr. Smith and will speak separately. The district court here imposed a kill-the-company sanction of $40 million and imprisoned both Mr. Wheat and Mr. Smith based on a substantiation requirement found nowhere in the four corners of the injunction. This case can be resolved by looking at two things, the language of the 2008 injunction on which the district court based its contempt findings, and the court's decision last year in LabMD. As this court recognized in vacating the prior contempt order, it said, quote, the injunction did not mention any requirement to produce clinical trials to substantiate weight-loss representations. And as the district court and the FTC were forced to recognize, nothing in the four corners of the injunction limited competent and reliable scientific evidence to randomized, double-blinded, placebo-controlled clinical trials of the sort required to validate drug claims. Here's the problem that I have. It seems like you all may have waived this issue. And the reason that I say that is because it wasn't brought up specifically when the injunction was issued at that time, whether there were any objections to anything, it was not brought up. Then you all appealed, and we affirmed, and it wasn't raised in the appellate brief either. I mean, maybe you did obviously challenge vagueness under the First Amendment of the terms, but we affirmed anyway. So even if we wanted to construe that as applying to your current position, we affirmed. So I'm not sure how we get to it is what I'm trying to say. Maybe you could help me with that. I understand. First, as a matter of black-letter law under this Court's case law, the FTC has to put on clear and convincing proof that the order was valid and lawful, and that the order was clear, definite, and unambiguous. That is always part of an evaluation of whether contempt sanction can be administered. Second, with respect to waiver, we think it would be manifestly unfair to hold that this Court shouldn't review the injunctions in forcibility or the contempt order here, because in 2008, defendants weren't able to predict that over a decade later, the FTC would read into the injunction a new and far more stringent requirement. Well, except that your attorneys did, right? I mean, your attorneys specifically said nothing less than the double-blind tests will suffice. And, I mean, the way I'm reading the record, it looks like perhaps that particular opinion wasn't really appreciated, and so the attorney was fired. I mean, it seems like you all knew this and went ahead and . . . So, as to the question of subjective understanding, I'm certainly happy to address that. First, that's not part of the inquiry. The inquiry is whether it's an objective one, whether a reasonable person would understand what the injunction requires. And that's measured by the four corners of the injunction itself. With respect to the factual question you had about the understanding of the parties, I think that that ignores the larger context of the communications where you see a back and forth. That particular memo, I think, was a snapshot from the beginning of the process and not one that considers what happened at the end, particularly here. There's actually multiple. There are multiple communications of that nature. I mean, that's what happened. But I think if you look, for example, there's a communication from Mr. Wheat where he says, what I understand is that we can't have specific percentages, like the claims that were at issue in the first motion for summary judgment, where there were specific percentages of weight that they said that you could accomplish. They're measurable goals. And he said, you know, in the past, nobody's had a problem with saying rapid weight loss. And I think, given that, I think there's what it shows is an attempt to try and figure out what the standard actually was. And in order to impose a contempt sanction, particularly the contempt sanction of $40 million, you have to be able to understand what the injunction actually requires. And this Court itself said in the last round, when it vacated the injunction before, that it didn't mention any requirement to produce clinical trials to substantiate weight loss representations, particularly ones here. Both of the witnesses on which the government relied, Dr. Rohn, in its case in chief, and Dr. Van Bremen in its rebuttal, wanted to see a standard that was the same as one for drugs. But Congress made a specific choice in D'Shea not to require that same standard. It's certainly not required in the text of the actual injunction. The injunction itself talks about competent and reliable scientific evidence. In the district court's order granting summary judgment well before, it talked about the fact that, depending on the claim, you can have very different ways of meeting that substantiation requirement. And here, in fact, there were randomized clinical trials. The government took issue with the experts that the defense put on, but that ignores the fact first that the government bears the burden of proving contempt by clear and convincing evidence, something that they didn't do here. It also ignores the fact that we had six experts who testified from a range of different backgrounds. The government didn't oppose them as experts. They didn't say that they weren't qualified to weigh in. And, in fact, our clients relied on over 100 different studies. And if you look at the language of the FTC's guidance, the FTC's own guidance specifically says that there's no fixed formula for the number or type of studies required, that results obtained in animal and in vitro studies and research explaining the biological mechanism underlying the claimed effect may be enough, and that studies on the precise formula used in the advertised product are not required. There were tests here on the key ingredients. And, indeed, the advertisements and the labels themselves said that there weren't product specific clinical trials that had been done, that the studies had been done based on the key ingredients. Can I take you back to the waiver argument for a moment? Because I'm still, I still have concerns about that. It seems to me that even though in order to enforce the injunction, there has to be, we have to go and take a look at the injunction and make sure that it is valid. In this case, when you're attacking the validity of the injunction, it seems to me like what you're really doing is saying that the injunction's not clear enough under Rule 65D. Would you agree with that? We are making the argument that it is not clear enough, that there is an indeterminate standard. That's precisely what this Court said can't stand under Lab MD. The fact that it is unclear, I think, only became evident over the fact that we had a experts trying to debate not whether the standard was met, but what that standard was in the very first place. That cannot sustain a contempt finding. The whole point of contempt is that the government is getting the benefit of fewer due process protections for the defendants. And so that is why Rule 65 requires in this instance that it be clear and unambiguous. And the Court, this Court has repeatedly held that in order to find contempt, that the government has to prove by clear and convincing evidence that the allegedly violated order was valid and lawful, and that the order was clear, definite, and unambiguous. And they simply didn't do that here. What Lab MD teaches us is that an indeterminable standard is no standard at all. Here, the government's own experts couldn't agree on what the standard was. But in our, I'm sorry, but in the case that you're relying on, the appeal in this case, I thought that the reason that we sent it back was because the district court had misapplied the doctrine of collateral estoppel. I mean, because basically what we said was this case involves different representations, different products, and the interpretation of a different legal standard, right? Isn't that what we said? That is. Okay. So again, I'm still a little confused as to how you all didn't waive this. Well, we raised the issue in the first appeal from the contempt order, the initial contempt order. And in it, the Court specifically said, as you quote, that there was a different, it was the interpretation of a different legal standard. So I think we have raised it. We are entitled to continue to challenge it because it provides the basis for the contempt order here. And if you look, I think, at the Court's language, it also specifically said that it was premature to judge the four corners argument that had been raised in that first appeal from the initial contempt order. I don't know. Does that answer your question? Thank you. You've saved some time for rebuttal. So we'll hear from you again. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. May it please the Court, there's another reason in this case for dismissing this case against my client, Stephen Smith. The FTC did not, indeed could not, prove by clear and convincing evidence that my client had the ability to comply with this injunction. That is something that this Court's case law required it to do. My client was not a shareholder of Hitech. He's an independent contractor with no power to modify the advertising or labels policy. Yet, he now has a $40 million judgment hanging over his head, and he spent 70 days in jail under an order which this Court later vacated. At very best, the evidence showed that for some time, Mr. Smith controlled day-to-day operations at Hitech. Controlling day-to-day operations is not the same thing as having the power to modify advertising policy. If I bring a babysitter in for the weekend, that babysitter is running the day-to-day operations of my household. She does not have the power to call a realtor and put a for sale sign in the front yard. That is not what running day-to-day operations means. For that reason, and that reason alone, this Court should vacate the order against Mr. Smith. He never had the power to modify the advertising, and the FTC did not prove that he did. Thank you. Good morning, Your Honors. Good morning. May it please the Court, Jack Metzler for the Federal Trade Commission. The injunction in this case forbade Hitech from saying that its products caused rapid fat loss, rapid weight loss, increased metabolism, and suppressed appetite. Unless they had competent and reliable scientific evidence, this showed that their products actually do those things. The fact was they didn't have the science, but they made the claims anyway. The Court should affirm the District Court's decision holding Hitech, Mr. Wheat, and Mr. Smith in contempt because, first of all, the injunction was clear on its face. They obviously understood it, even setting aside the waiver issue. And the District Court didn't commit any error, much less clear error, when it found as a fact that the science that they put forth didn't come close to substantiating those claims. So to start with the waiver, Your Honor, I think it was, I think my friend said that the Hitech defendants raised that in their first appeal on the contempt before this Court. That is not the case. They expressly declined and they expressly said that they are not arguing that the injunction is vague on its face. They claimed that they were making an as-applied challenge. But regardless of that, they did not mention it when, given the opportunity before the District Court, when the injunction was being entered. And on direct appeal from that order, which this Court affirmed, they didn't mention it there either. So the entire issue of vagueness is waived. But in any case, under this Court's cases, the standard for whether an injunction is vague is whether the defendants actually understood it. And here they clearly did. Their contemporaneous communications talk about the claims. They say we can't make this claim unless we have a double-blind, placebo-controlled, et cetera, study. And then, as Judge Rosenbaum points out, they had advice from their attorneys who wrote a detailed memo saying, look, if you make these claims, if you say that fasting causes rapid weight loss, if you say that it causes, that it will cause rapid fat loss and increases metabolism, those are the exact things that are in the injunction. And the judge is very likely to hold you in contempt. So it's no surprise that they were, in fact, held in contempt. And again, no surprise that they never brought this up on direct appeal because they knew what was happening. With regard to the actual evidence that they put on, it consisted of two things. They had essentially animal studies, in vitro studies, and they had some controlled clinical trials on different products containing different ingredients that didn't even measure things like fat loss and weight loss. So the district court was clearly within its discretion to find that those studies did not substantiate their claims that the products cause rapid weight loss, that you'll get to melt away, or that they would increase your metabolism, or that they're the most powerful anorectic, which means appetite-suppressing supplement available. So if there are no questions... Well, no, not so fast. I've been going a while now. I don't want to keep you... The argument on the other side is that, you know, an ordinary person wouldn't know what it means to, you know, have, quote, competent and reliable scientific evidence, and that during this trial, there were experts on either side that debated what that meant. And so how did... I mean, what do we do with that? So the judge here believed both that, or the district court held both that they would need, the kind of evidence that they would need to satisfy, to prove that these claims were true is the randomized controlled studies, clinical trials. But that doesn't, and, you know, they're right that those words don't appear in the injunction, but that's just sort of a shorthand for saying, for this kind of claim, that's the kind of evidence you're going to need. If they had a different sort of claim, you know, for example, let's say that they had an animal study, and they represented the results of that animal study, you know, accurately and truthfully, and said that this doesn't necessarily mean that the same thing's going to happen in humans. Well, you wouldn't need a randomized controlled clinical trial on humans to show that that was true. What you would need is that study, right? So the standard that is in the injunction is one that needs to be clear so that people can understand, but it also needs to be broad enough to encompass the different claims that they're going to make. Here, they understood that what they were going to need for these claims was clinical trials, and they knew that because these are the very same sorts of claims that they made on their other products. And in fact, the court found that one of the reasons they needed an injunction was because of the claims they were starting to make with Fasten, which is one of the products in this case that was not in the earlier enforcement case. So I think that, you know, the fact that they actually did understand goes to whether a reasonable person would understand. And, you know, this Court's cases say that that is a significant factor as to whether it's, you know, that is the standard for whether they would understand. And I'd also like to, before you sit down, respond to Ms. Dunnegan's arguments about Mr. Smith. Oh, I'm sorry. I was remiss to not mention that. So the main thing about Mr. Smith is that he was a named party in the underlying enforcement action. He is named in the injunction. So he is enjoined personally from making these representations in the connection with the sale of any products. As he said, as my friend said, he ran the company from day to day. So did he have the ability to not participate in this? Absolutely. He didn't have to work there. He didn't have to take that job. But what he actually did was he placed these very advertisements, the one he's the one who's arranging for them to be placed in magazines. And as you have seen from the contemporaneous communications, he was communicating with Mr. Wheat while he was in jail about these exact representations. And he was saying, look, the lawyers have a problem with them. You know, I'm not sure. And at any point, he could have just, you know, not said, I'm out. I'm not going to do this anymore because I am enjoined from making these representations. He also admits in his brief that he was a salesperson. So he was bringing these products to retailers and saying, I would like you to sell these products. Well, he was bringing the products with the representations on the packaging in light of the advertisements that he was placing. So I don't think there's really any way to argue that he wasn't directly in violation of the injunction against him. Now, as for the company, well, you know, running day-to-day operations, you know, that is kind of like control. And if the day-to-day operations in my friend's house include, you know, something illegal, the babysitter should probably say, I'm not going to do that anymore. I'm going to not do this babysitting job because you're doing things that are illegal. And I think that's it for Mr. Smith. All right. Any further questions? Thank you. No further questions. I ask that the Court affirm. And thank you for your time. Your Honors, no case has ever held that competent and reliable scientific evidence requires a product-specific RCT. Every court other than the district court in this case has rejected that in Bayer, in Basic Research, in Garden of Life. And indeed, the government's own expert agreed that no company in the industry  error here was that the district court rewrote the injunction to require something that isn't in the four corners of the injunction. Do you agree or disagree that even where there is a vague injunction, if it can be demonstrated that the parties understood what it meant, then that's good enough? Do you, is that our, is that the precedent? I do disagree with that. I don't think that that is correct. If you look at the cases, for example, that the government cited in support of its claim that subjective understanding alone can be enough, for example, those look at the language of the indictment, of the injunction. They look at, they don't look beyond it to evidence. And we think that, moreover, as a factual matter, looking at the evidence, it doesn't support that. If you look, for example, at the memo that they discussed, those were attorneys who were not advertising experts who actually said that this should be reviewed with an advertising attorney. And in fact, the ads were reviewed with an advertising attorney. There was an attempt to make sure that they understood what the standard was without being able to know what it ultimately would be. And that's the fundamental problem here, is that the standard was only defined at the actual contempt hearing. If the government wanted to ask for an injunction that would incorporate a requirement of RCTs, they know how to do that. They have done that in other cases. They could ask for a modification here that clarified going forward what the obligations are. But what they can't do is seek contempt based on past conduct, based on a requirement that's found nowhere in the four corners of the injunction. The Supreme Court, in fact, I'd point to some language from the FTC's own brief, where they say specifically, to require the district court to delineate in the injunction itself the specific scientific substantiation applicable to every conceivable claim, for every conceivable covered product would demand impossible feats of prognostication. But the problem is you can't then shift the burden to the defendants in this case to predict what would ultimately be required. And the requirement that the district court settled on, then it looked at to exclude all other evidence aside from the RCTs, which did exist. There were RCTs for the key ingredients here, was to say that the only way to satisfy this requirement. But that's different from an RCT for the product as a whole. Different ingredients can interact in different ways. And then their effects under the RCTs for the individual ingredients may not really hold too much water anymore once they're combined with other components. I mean, wouldn't you agree? I would agree. But when you look at what the government's expert, Dr. Rohn, testified to, he testified to it in a theoretical way. He didn't know of any reason why in this case there would be antagonistic effects. And if you look also at the testimony of the defendant's experts, and, again, the burden still remains with the FDC to show contempt, they specifically said that there was no reason, based on these ingredients, to think that there was any antagonistic effect and that the other ingredients in the different products were there in sort of minuscule amounts. So we think, given all of those facts, it's worthwhile to remember what the Supreme Court said when it said the judicial contempt power is a potent weapon. And when it's founded on a decree too vague to be understood, it can be a deadly one. One of the things that the government must prove by clear and convincing evidence is that we violated a specific command. And that specific command is in the four corners of the injunction. The fact that the ultimate standard was only defined at the contempt hearing well after the fact means that a $40 million contempt sanction cannot stand. Thank you, Ms. Ward. Thank you very much. Your Honors, with all due respect to counsel for the FTC, it is not the law in this circuit, in any circuit of which I'm aware, that being an employee of a company that is in violation of an injunction is itself a violation of the injunction. But wasn't there more here? I mean, not only was he enjoined the first time, but also he wasn't his position as vice president in charge of sales and the head of the food, drug, and mass division there. And didn't he, as his responsibilities, have advertising and promoting high-tech products at trade shows? I mean, wasn't he? Yes, he did all of those things, Your Honor. But he did not have the power or the authority to modify the advertising. Only Jared Wheat had that power. But was it okay, then? I mean, he's not really arguing that it would be okay for him to knowingly sell products in violation and advertise products in violation of the injunction, is he? Well, Your Honor, first of all, I would agree with Ms. Voights that, in fact, these were not in violation of the injunction because the injunction is invalid. Focusing on your client's argument. But with respect to my client, Your Honor, what the government is asking this court to is to say that unless my client quit his job, quit working in the dietary supplement industry, give up his livelihood— Why would he have to quit working in the dietary supplement industry? He cannot make claims, unsubstantiated claims, about any product. And as Dr. Arone testified below, no dietary supplement company has ever done two RCTs on a product. It just hasn't been done. So we can't sell any of them. And the government asked the district court to ban my client from the dietary supplement industry, and the district court refused. Now, after having waived the argument because it did not appeal from that decision, it now attempts to bypass its own waiver of the issue and ask this court to do de facto what the district court refused to do to jury. For that reason, this order should be vacated against my client. Thank you. Thank you. We'll now call the next case, and that is Merza Rivera.